425 So.2d 737 (1983)
STATE of Louisiana
v.
Gregory SMACK.
No. 82-KA-0394.
Supreme Court of Louisiana.
January 10, 1983.
*738 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Carey T. Schimpf, Catherine Estopinal, Anne Goodman, Asst. Dist. Attys., for plaintiff-appellee.
Timothy Fischer, Frances Jack, Shreveport, for defendant-appellant.
MARCUS, Justice.
Gregory Smack was charged in the same information with four counts of forgery in violation of La.R.S. 14:72. Subsequently, the state filed an amended information in which one of the counts was dropped. Pursuant to a plea bargain, defendant withdrew his former plea of not guilty and entered a plea of guilty to one count of forgery. The state agreed to a sentence limitation of five years and dismissal of the two remaining counts. The sentencing hearing was held in conjunction with the hearing in which defendant entered his guilty plea. Defendant was sentenced to serve five years at hard labor with credit for time served. On appeal, defendant relies on one assignment of error for reversal of his sentence.
Defendant contends the trial judge erred in imposing an excessive sentence. This issue is before us for review. State v. Pearson, 425 So.2d 704 (La.1982); State v. Bell, 412 So.2d 1335 (La.1982). Defendant's plea bargain was not for a specific sentence, but for a maximum sentence limitation. Therefore, State v. Hicks, 403 So.2d 676 (La. 1981), and State v. Curry, 400 So.2d 614 (La.1981), are inapposite.
On June 14, 1981, defendant, an employee of the Shreveport Alarm Company, was assigned as a security guard for William Wolfe Bakery in Shreveport. In the course of his work, he had access to the office where the company checks and check protector were kept. While on duty, defendant appropriated twenty-eight checks, made them payable to himself, and used the bakery's check protector to fill in the amounts. Twelve checks were fixed in the amount of $950 and sixteen in the amount of $224.98. Defendant then signed the name of Jean M. Patton, the authorized signature for William Wolfe Bakery, as the maker of each check.
On June 18, 19 and 22, defendant opened a checking account at three different banks, National Bank of Bossier in Bossier Parish, and Louisiana Bank and Trust and Pioneer Bank in Caddo Parish. Each account was opened by depositing two checks, one for $950 and one for $224.98, less cash, for a total deposit of $50. In all, defendant cashed ten checks at National Bank of Bossier, eight checks at five or more of the Louisiana Bank and Trust branches in Caddo Parish, and two checks at Pioneer Bank in Caddo Parish, for a total of twenty checks. He used an additional check as a deposit on a car in Bossier Parish. The *739 seven remaining checks were recovered from his vehicle.
At the time of his arrest, defendant was in the city jail for disturbing the peace. His arrest in the present case was for only those checks, seventeen in all, either cashed or recovered from his car in Caddo Parish. Of the ten checks cashed in Caddo Parish, six were in the amount of $950 and four in the amount of $224.98. Shortly after his arrest, defendant admitted the details of the offense. He also stated that he had used $6,000 of the money to acquire a 1979 Mercury Cougar and spent $2,000 at the racetrack; he claimed that $1,286 had been stolen from him while sleeping in his car.
Defense counsel, while first advising defendant not to plead guilty with a five-year limitation on the sentence, made it clear that, if he did plead guilty, he should require at least a five-year limitation because of his background and being a first offender. He also advised defendant to wait until a pre-sentence investigation could be made. However, defendant preferred to enter a plea and be sentenced without delay because of medical and personal reasons.[1] While the trial court was at first reluctant to "bind itself to a five-year limitation" before presentation of all the facts, upon assurance by the state that it was aware of defendant's criminal background, the court agreed to proceed with a "five-year limitation" on the sentence.
Defendant testified at the hearing. He stated that he was forty-four years old and had been married three times and had nine children, two still under the age of eighteen. He had served twenty years in the Army, including about five years in Vietnam. He retired as a "Command Sergeant Major, E9" and receives a monthly pension of $1,186. According to defendant's testimony, he has nine years of higher education and is presently working on a doctorate in child psychology. He stated that he had taken the checks in question because he was under pressure from a "loan shark" who, he feared, might harm his wife and ex-wife if the loan was not paid. He further stated that he intended to make restitution for the losses occasioned by his conduct. Defendant admitted that, while in the Army, he had been charged with AWOL but after serving in jail for fourteen days the charge was dropped. He also stated that several months prior to his arrest on the present charges, he had been incarcerated for forty-one days on an arrest warrant from Georgia but was released on a finding that he had been detained on an improperly issued warrant and an insufficient charge.
After defendant had testified, the trial judge pointed out that defendant "actually had ten [forgery offenses]" which were reduced to three because some of them took place on the same occasion. He further noted that forgery carries a maximum sentence of imprisonment of ten years at hard labor and, absent the plea bargain, defendant would have been exposed to a far greater penalty. The judge did not consider defendant's good military record and medical problems sufficient reason to release him on a suspended sentence and probation, given the extent of the financial loss which he had caused and the need to protect society from such losses. Because of the seriousness of the offense and the surrounding circumstances, the judge was of the opinion that defendant "must have some correctional treatment" and sentenced him to five years at hard labor. The judge recommended that the Department of Corrections take into consideration defendant's "excuse [and] his prior record, with regard to how long a sentence he ought to serve" before parole.
La. Const. art. 1, § 20 prohibits the imposition by law of excessive punishment. In State v. Sepulvado, 367 So.2d 762 (La.1979), we held that "the imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional *740 right against excessive punishment that is enforceable by this court on appellate review of his conviction." Given compliance with La.Code Crim.P. art. 894.1, a sentence will not be set aside as excessive absent manifest abuse of the trial judge's sentencing discretion. State v. Spencer, 374 So.2d 1195 (La.1979); State v. Sepulvado, supra. The penalty imposed must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980).
We do not consider the penalty imposed in the instant case so disproportionate to the crime committed as to shock our sense of justice. Defendant was employed in a position of trust. The record shows that he appropriated twenty-eight checks, made them payable to himself, filled in the amounts, and forged the signature of the maker of each check. Thereafter, he cashed twenty of the checks at numerous branches of three different banks on three separate dates. While claiming that he stole the checks because of pressure from a "loan shark," his statement to the police shortly after his arrest was that he had used $6,000 to buy a car and spent $2,000 at the racetrack; he claimed that the rest of the money had been stolen from him while sleeping in his car. Defendant elected to enter a plea bargain whereby he pleaded guilty to one of the three counts of forgery for which he was charged. The state agreed to dismiss the remaining two counts and the parties agreed to a five-year limitation on the sentence. The trial judge properly noted that, absent the plea bargain, defendant would have been exposed to a far greater penalty. While not controlling, we consider that the plea bargain should be considered as a factor in determining whether the sentence imposed in accordance therewith is excessive. Under the circumstances of this case, we are unable to say that the trial judge abused his discretion in sentencing defendant to five years at hard labor. Hence, we do not find defendant's sentence excessive.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
NOTES
[1] Defendant testified that he had an ulcer and asthma and wanted to plead guilty and be sentenced so that he could be sent to another institution where he could get proper medication and food for his health. He also stated that he believed that once he was sentenced his new wife of twenty years of age would feel free to divorce him.