# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-624

STATE OF LOUISIANA

VERSUS

RONALD T. FONTENOT

\*\*\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## FOURTEENTH JUDICIAL DISTRICT COURT
## PARISH OF CALCASIEU, NO. 2007-4912 DIV. E
## HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## JAMES T. GENOVESE
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett,  J. David Painter, and  James T. Genovese, Judges.

**AFFIRMED.**

**Terry J. Johnson**
**Johnson & Vercher L.L.C.**
**910 Ford Street**
**Post Office Box 849**
**Lake Charles, Louisiana 70601**
**(337) 433-1414**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **R. T. F.**


**John F. DeRosier**
**District Attorney – Fourteenth Judicial District**
**Carla S. Sigler, Assistant District Attorney**
**1020 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GENOVESE, Judge.**

The Defendant, Ronald T. Fontenot, pled guilty to three counts of sexual battery, violations of La.R.S. 14:43.1. He was sentenced to ten years at hard labor on each count to run concurrently, without benefit of parole, probation, or suspension of sentence. The Defendant appeals, contending that his sentences are excessive. For the following reasons, we affirm.

## FACTS

Between May 1, 2005, and August 31, 2005, the Defendant, age 59 at the time, touched the victim, then a seven-year-old girl, on the buttocks and/or anus with his hand while throwing her into a swimming pool. On a separate and subsequent occasion, while swimming in the pool with the victim, between July 17, 2006, and July 18, 2006, the Defendant again touched the victim more than once on her anus and in her vaginal area. He also admitted that once he inserted his finger into her vagina. The Defendant told the victim not to tell anyone about these occurrences.

The Defendant was indicted on six counts of sexual battery. He originally pled not guilty and then changed his plea to guilty on three counts of sexual battery. The trial court ordered a pre-sentence investigation and set sentencing for June 4, 2008.

The trial court reviewed the pre-sentence report as well as a letter from the Defendant's counsel which included a report of the Defendant's psychological evaluation by Dr. Maureen Brennan dated January 9, 2007.[1] The trial court indicated that it had received a second letter from Dr. Brennan dated April 29, 2008. The second letter does not appear in the record. Neither the Defendant nor the State cites

---

[1]Although the trial court referred to a letter dated January 9, 2007, a letter from Dr. Brennan dated "27 January 2009" was admitted into evidence at the hearing on the motion to reconsider sentence.

1

as error the trial court's consideration of this item that is not in the record. The trial court also considered, on behalf of the Defendant, letters from the Defendant's son and daughter, which likewise do not appear in the record.

The victim's grandmother testified at the sentencing hearing on the victim's behalf. The trial court received letters from the victim's counselor, her cousin, and her parents. A concerned friend also wrote a letter to the trial court, as did the victim. None of these letters appear in the record. At the sentencing hearing, the trial court addressed the aggravating and mitigating factors of La.Code Crim.P. art. 894.1. He noted that the penalty for the Defendant's crime had increased to provide for a twenty-five-year minimum sentence only a short time after the Defendant committed these offenses.[2]

Dr. Brennan's January 27, 2009 letter opined that the Defendant could be successfully treated on an outpatient basis. She believed that he represented "little risk to the community at large." Dr. Brennan suggested "lengthy incarceration can exacerbate the very issues that contributed to the acting out in the first place and actually increase, rather than decrease, the risk to the community." She recommended five to seven years of probation "to assure the opportunity to address these issues effectively," and four to five years without incarceration, despite the fact that said recommendations are not allowed by statute.

At the sentencing hearing, the trial court took note of Dr. Brennan's opinion and the letters submitted on the Defendant's behalf and stated:

> [I]f [the victim] had not told somebody, there's no telling how many
> more times [the Defendant] would have improperly touched her and

---

[2]2006 La. Acts No. 103, § 1, effective August 15, 2006, increased the penalty for sexual battery of a child under the age of thirteen from a maximum of ten years to a minimum of twenty-five years.

maybe he would have ended up exposing himself to her and doing something worse, because I think this is the way those – my understanding is the way child molesters oftentimes bring their victims, by repeatedly touching them and telling them they care about them and those types of things, until they can get themselves in a position where they can do more, and I think that's what we have here, even though the psychological testing did not indicate that [the Defendant] was a predator, necessarily, he put himself in those positions to where he can do the things that he did to her.

. . . .

And in your case, – of course, I don't have anything else before me to indicate this . . . but there's [sic] some studies out there that show for every one child you molest there's [sic] lots of – that you get caught molesting, that there are many, many others that have been molested and many other victims out there. . . . And it just seems unlikely that in the 60-something years that you've been alive that this is the first time that you've ever done something like this.

The trial judge repeated those sentiments at the hearing on the motion to reconsider his sentence, commenting:

I don't know how knowledgeable Dr. Brennan is about various studies, but I do know that Dr. John Simoneaux in Pineville is a psychologist that treats sex offenders and has indicated through various conferences that I've attended where he's presented that there are studies that show that there are many, many victims that lay in the wake each time an offender is charged; that there are many more victims than just the one that they're charged with. That's the studies that I've heard him repeat. If Dr. Brennan doesn't know about those, I'm sure Dr. Simoneaux's [sic] not making that up, so I'm not going to – yeah, it doesn't matter to me whether she says she knows about that or not. That's something that I guess I'm familiar with through conferences that I've attended.

The trial court also told the Defendant's counsel, "[w]e don't know what he's done and so I think it's a good argument to make on behalf of your client because, you know, there's no proof that he's ever done that to anyone else . . . we don't know that for sure . . . . I mean your client denied at all touching this child at the beginning and then he ended up admitting it. So, you know."

The trial court sentenced the Defendant to the maximum of ten years at hard

3

labor on each of the three counts, without benefit of parole, probation, or suspension of sentence, with the sentences to run concurrently.

## ASSIGNMENT OF ERROR

The Defendant asserts that his sentences are excessive on three grounds, the same arguments that he made in his motion to reconsider his sentences. First, the Defendant argues that the trial court refused to accept him as a first offender by making inferences from unknown studies not introduced into evidence without giving the Defendant the opportunity to defend himself against the implication that he had committed these offenses on other, untried occasions. Second, the Defendant argues that the trial court erred in ignoring the goal of rehabilitation as reported by Dr. Brennan, instead, sentencing the Defendant solely for purposes of punishment. Finally, the Defendant contends that the trial court overstated the damage to the victim.

### *REFERENCE TO STUDIES NOT IN EVIDENCE*

The Defendant asserts that the trial court's comments imply that he did not treat the Defendant as a true first offender with regard to his sentences and based his sentences on studies which he had become familiar with at various conferences. However, the record contains no evidence of any such studies. The trial court's reference to and apparent reliance on evidence not in the record equates to taking judicial notice of the facts or opinions set out in the unidentified studies.

In order for the trial court to take judicial notice of an adjudicative fact, such as those set out as purported facts or conclusions in the mentioned studies, the fact must be "(1) [g]enerally known within the territorial jurisdiction of the trial court; or (2) [c]apable of accurate and ready determination by resort to sources whose accuracy

4

cannot reasonably be questioned." La.Code Evid. art. 201. The "fact" noticed by the court must form a "part of the common knowledge of every person of ordinary understanding and intelligence," and the "fact" must not be "subject to reasonable dispute[.]" *Walker v. Halliburton Services, Inc.*, 93-722, p. 3 (La.App. 3 Cir. 3/1/95), 654 So.2d 365, 368, *writ denied*, 95-1507 (La. 9/22/95), 660 So.2d 481.

The general public is not familiar with the theories of scientific and/or sociological studies like those referred to by the trial court. Further, studies of this type, simply because of their nature, can be highly susceptible to dispute. Thus, we find that the trial court erred in taking judicial notice of and/or referring to unidentified studies not in evidence that suggest that the Defendant may have committed prior acts of sexual battery. However, there is nothing in the record, or in the trial court's erroneous reference to unidentified studies not in evidence, that indicates that it sentenced the Defendant solely or particularly based on said studies.

This court has set out a standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1[, 3] (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784[, p. 2] (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The nature of the offense here is three counts of sexual battery against a child who was seven and eight years of age when the offenses occurred. The facts of the case indicate that the Defendant's grandchildren are the cousins of the victim, that the Defendant apparently went through a devastating divorce in 1998, and that he became a loner at that time. The present offenses were his first felony offenses. In 2003, he was fined for DWI. Dr. Brennan did not believe that the Defendant was a predator for whom there is no treatment, but rather, one who could be successfully rehabilitated. As the trial court noted, however, "it doesn't matter to [the victim], it doesn't make a difference to her whether [the Defendant is] on the far end of the scale of a sexual predator or whether [he is] an opportunist. She was molested." The Defendant admitted to three occasions of sexual battery in his plea agreement, but the

6

victim, according to counsel for the State, "is insistent that it occurred six times." Thus, the Defendant potentially gained substantial benefit from his guilty plea.

Sexual battery of a child under the age of thirteen is an offense which our legislature intended to deal with quite seriously. The Defendant pled guilty to these acts occurring between May 1 and August 31, 2005, and July 17-18, 2006. The maximum sentence on those dates was ten years at hard labor, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:43.1. Only about a month later, on August 15, 2006, a statutory revision became effective, increasing the *minimum* sentence for sexual battery to twenty-five years at hard labor without benefits and the maximum sentence to life imprisonment. 2006 La. Acts No. 103, § 1. This increase in penalty for sexual battery indicates the legislative intent to deal harshly with those who violate La.R.S. 14:43.1 when a child under the age of thirteen is involved.

The Defendant pled guilty to three counts of sexual battery and was sentenced to the maximum ten years on each count. Had the sentences been imposed consecutively, as they could have been, the Defendant would have been facing thirty years at hard labor. As it is, the concurrent nature of the sentences reduces the Defendant's possible time in prison by two-thirds. Thus, while the Defendant may correctly say he received the maximum sentence on each count, the concurrent nature of the sentences dramatically reduces the time the Defendant will serve. He will, in effect, serve only one maximum sentence because the sentences were ordered to run concurrently.

The trial court, however, erroneously considered the sentences to equate to three and one-third years on each count. He did not consider the sentences he

imposed to be the maximum allowed. At the hearing of the motion for reconsideration, the trial court stated "[t]he maximum sentence is 30 years. He got 10 years. So he really is on the lower end of the sentencing range that was available to the Court." Nevertheless, the trial court clearly stated that it sentenced the Defendant "to serve ten (10) years, and that's without benefit of probation, – on each count concurrent, without benefit of probation, parole, or suspension of sentence." Though three ten-year sentences served concurrently are not the equivalent of three consecutive sentences of three and one-third years each, we do not find the sentences to be excessive.

Similar cases reflect that the Defendant's sentences are not excessive. The defendant in *State v. Jaramillo*, 06-1377 (La.App. 3 Cir. 3/7/07), 953 So.2d 146, *writ denied*, 07-732 (La. 11/2/07), 966 So.2d 600, forced his ten-year-old male victim to perform oral intercourse and touched the victim's buttocks with his penis. The trial court sentenced the defendant to the maximum ten years.[3]

In *State v. Baker*, 42,428 (La.App. 2 Cir. 9/19/07), 966 So.2d 124, a twenty-seven-year-old defendant was originally charged with one count of forcible rape and one count of sexual battery for placing his fingers inside the vagina and sucking or biting the breast of his thirteen-year-old victim, a close relative. The defendant was a first felony offender who pled guilty to the sexual battery charge, and the rape charge was dismissed. The second circuit noted that "maximum or near maximum sentences are reserved for the worst offenders and the worst offenses." *Id.* at 126. It noted that the defendant, who had two prior misdemeanor convictions for theft and

_____

[3]The *Jaramillo* defendant did not allege on appeal that his maximum sentence was excessive, but rather claimed that the evidence was insufficient to convict him. Thus, the opinion does not analyze why the maximum sentence was imposed.

disturbing the peace, "took advantage of a family member who was a minor." *Id.* at 127. The victim's mother encouraged the maximum sentence because of the long-term effects of the offense on the victim and the family. The court held that "[t]he sentence [was] tailored to both the offender and the offense." *Id.*

The defendant in *State v. Davis*, 06-922 (La.App. 3 Cir. 12/29/06), 947 So.2d 201, was the live-in boyfriend of the mother of his two minor victims. The defendant touched the pubic, breast, and buttocks areas of the children while they were sleeping. The trial court "considered the [d]efendant's pre-sentencing investigation report, the class of offense, the nature of the offense, the seriousness of the offense, the manner in which the crimes were conducted, and [d]efendant's history" in sentencing the defendant to two ten-year terms at hard labor, to run consecutively. *Id.* at 203-04. This court affirmed, noting that the consecutive nature of the sentences was appropriate because the offenses "took place at different points in time and with different victims over a three-month period." *Id.* at 204.

Here, the victim was a family member, the cousin of the Defendant's grandchildren. The victim's grandmother testified at the sentencing hearing that the Defendant's actions had torn apart their family. The Defendant violated a relationship of trust with the victim and then told her not to tell anyone. In *State v. Kirsch*, 02-993, p. 8 (La.App. 1 Cir. 12/20/02), 836 So.2d 390, 395, *writ denied*, 03-238 (La. 9/5/03), 852 So.2d 1024, the court stated, "[t]he jurisprudence indicates that maximum, or nearly maximum, terms of imprisonment may not be excessive when the defendant has exploited a position of trust to commit sexual battery or indecent behavior with a juvenile." Here, the trial court considered the victim's age, vulnerability, and relation to the Defendant as aggravating factors. In the case at bar,

9

the totality of these circumstances justifies the imposition of the maximum sentence. The facts show that the three concurrent ten-year sentences at hard labor, without benefit of parole, probation, or suspension of sentence, are not excessive, even considering the Defendant's status as a first offender, and even disregarding the unidentified studies to which the trial judge referred.

### SENTENCING FOR PUNISHMENT VS. REHABILITATION

The Defendant argues that the trial court erred in viewing the purpose of La.R.S. 14:43.1 as being for punishment only, thereby ignoring the goal of rehabilitation despite the report of Dr. Maureen Brennan. For the reasons set forth above, we find that the Defendant's sentences are not excessive. The trial court considered Dr. Brennan's letter and sentenced the Defendant to a total of ten years at hard labor rather than the possible total of thirty years to which he could have sentenced that the Defendant by imposing consecutive sentences. The Defendant's sentence does not ignore the goal of rehabilitation, but rather enforces the legislative purpose to provide severe penalties for sex offenders.

### OVERSTATED DAMAGE TO THE VICTIM

Lastly, the Defendant argues that the trial court erred in sentencing him because it overstated the damage to the victim.[4] According to the Defendant, the victim has continued to do well in school and has required only six months of counseling at a cost of $315. The Defendant complains of the trial court's comments at the sentencing hearing:

> [T]hat child is going to suffer in the future. That child is going to have - we won't know for years and years and years the impact of what [the Defendant] did to her is going to have on her. . . . [I]t oftentimes leads to these - you know, to drug abuse, trying to put that out of their minds,

---

[4]The trial court indicated that this argument "shocked" him.

drug addiction, promiscuity, difficulty in relationships, having a hard -
not trusting men, just all kind of problems that will last the rest of her
life. And so she's been scarred for life . . . .

The Defendant argues, "[i]f the victim was damaged as much as the court describes,
there would be ongoing psychological counseling and extensive treatment."

The trial court correctly noted that the fact that the victim is still able to make
good grades in school is to her credit, not to the Defendant's credit. The cases cited
above do not indicate the level of damage experienced by the victims; they deal with
the offenses and the offenders. The alleged lack of damage to the victim does not
render the Defendant's sentences excessive.

## CONCLUSION

We find that the trial court erred by referring to studies not in evidence.
However, disregarding said studies entirely, we find that the facts in this case
adequately support the trial court's sentencing of the Defendant to three concurrent
ten-year terms at hard labor, without benefit of parole, probation, or suspension of
sentence for three incidents of sexual battery against this victim, who was seven and
eight years of age at the time of the offenses. The nature of the Defendant's offenses,
the legislative intent to deal harshly with sex offenders, and the prior case law support
the sentences imposed by the trial court, even for a first offender. Consequently, we
find that the Defendant's sentences are not excessive.

## DISPOSITION

The Defendant's sentences are affirmed in all respects.

**AFFIRMED.**